[Nos. C033943, C033973. Third Dist. Mar. 8, 2000.]

In re CAITLIN B. et al., Persons Coming Under the Juvenile Court Law.
SUTTER COUNTY DEPARTMENT OF HUMAN SERVICES, Plaintiff
and Respondent, v.
MICHELE B., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976, this opinion is certified for publication with the exception of part II of the Discussion.

**COUNSEL**

Janice A. Jenkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Darrell W. Larsen, County Counsel, and James Scanlon, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**CALLAHAN, J.**—Michele B., mother of the children Caitlin and Ryan, appeals from orders of the juvenile court terminating her parental rights and freeing the children for adoption (Welf. & Inst. Code, § 366.26; further undesignated section references are to this code). Appellant contends the

court erred in terminating her parental rights because Ryan's alleged fathers were not provided notice of the dependency proceedings. Appellant further argues there was insufficient evidence Ryan was likely to be adopted. We affirm the orders of the juvenile court.

FACTS

Caitlin and Ryan, now seven and five years old respectively, were removed from appellant's care in August 1996. Appellant failed to reunify with the children who were placed in long-term foster care in April 1998 because they were too emotionally disturbed to be adoptable. Throughout the reunification period, contact with appellant exacerbated the behavioral problems of both children.

The children were placed in the same foster home until August of 1998 when Ryan's behavioral problems were beyond the ability of the foster parents to control and he was moved to a new home. Both Ryan and Caitlin did better in separate homes. After the court terminated visitation between Ryan and appellant, his behavioral problems decreased and he adjusted well to his new foster home. In December 1998, the court continued the long-term foster placements and transferred the cases from Yuba to Sutter County.

Both Caitlin's and Ryan's foster parents were committed to them but neither were initially willing to adopt the children. Caitlin's foster parents were interested in a guardianship as they were concerned Caitlin would need ongoing services to deal with her history of abuse and neglect, and Ryan's foster parents had only intended to act as a short-term placement but had decided to keep him until an adoptive placement could be found. However, over time, both children's behavioral problems moderated while in foster care. In April 1999, the social worker believed both minors could be assessed as adoptable since their behavior had generally improved. The court set a section 366.26 hearing to determine a permanent plan for the children and ordered the fathers be served by publication.

In August 1999, after meeting with the State Department of Social Services (DSS) adoptions worker, Caitlin's foster parents changed their minds and decided they would be willing to adopt her. DSS had also identified a potential adoptive placement for Ryan with a family who had known him for some time and had expressed interest in adopting him. Both the social worker and DSS recommended termination of parental rights as to Caitlin and a 180-day extension as to Ryan to assess the prospective adoptive family and to complete notice by publication of Ryan's father.

From the outset of the dependency, up to and including her April 1999 petition for modification, appellant identified David P. as Ryan's father. When called to testify on her petition for modification, appellant did not suggest any other person was a possible father for Ryan. Over the years, the social workers in both Yuba and Sutter Counties sent notices of the proceedings to David P. at the address given. However, in September 1999, in a response to the social worker's report for the section 366.26 hearing and in a motion to disqualify the social worker appellant, for the first time, identified Ted M. as Ryan's father and asserted the social worker had ignored this new information. At the September 16, 1999, hearing scheduled to address section 366.26 issues, counsel for the minor noted the new disclosure in appellant's documents. The court, taking notice of the files from Yuba County, found David P. had always been the only person identified as Ryan's father and assumed the appropriate procedure had been followed in correctly identifying the child's parents.

The assessment prepared in September 1999 for the section 366.26 hearing stated the social worker mailed notice of the hearing to David P. at his last known address but the notice was returned. At the section 366.26 hearing in October 1999, no one objected to termination of parental rights on the grounds David P. had not been properly served nor did the social worker request a continuance to serve him by publication.

DISCUSSION

I

Appellant contends the court erred in terminating her parental rights because neither David P. nor Ted M. had proper notice of the section 366.26 hearing. Appellant has no standing to assert the issue.

"Where the interests of two parties interweave, either party has standing to litigate issues that have a[n] impact upon the related interests. This is a matter of first party standing." (*In re Patricia E.* (1985) 174 Cal.App.3d 1, 6 [219 Cal.Rptr. 783] [father and daughter had interest in both her welfare and the parent-child relationship so father could assert daughter's right to competent counsel].) In the absence of such intertwined interests, "a parent is precluded from raising issues on appeal which did not affect his or her own rights." (*In re Jasmine J.* (1996) 46 Cal.App.4th 1802, 1806 [54 Cal.Rptr.2d 560].)

Here, appellant's interest is limited to continuation or termination of her own parental rights. Her interests do not interweave with those of a

natural father whom she cannot identify and with whom she has no continuing relationship. Thus, she has no interest in asserting either his statutory right to a particular form of notice or his more generalized due process right to be heard, both of which are personal to him as they relate to his parental rights.

Appellant attempts to avoid the standing problem by arguing her parental rights cannot be terminated because the court cannot terminate Ryan's father's parental rights when he had no notice of the hearing. In support of this contention, appellant relies upon California Rules of Court, rule 1463(a) which provides, in part: "The court may not terminate the rights of only one parent under section 366.26 unless that parent is the only surviving parent, or the rights of the other parent have been terminated . . . or the other parent has relinquished custody of the child to the welfare department." The argument fails.

The compulsory joinder provision of California Rules of Court, rule 1463 is of no assistance to appellant's argument. The rule merely requires that termination of both parents' rights occur in a single proceeding. (*In re Joshua M.* (1997) 56 Cal.App.4th 801, 808 [65 Cal.Rptr.2d 748].) That was done here. The rule was never intended to serve a terminated parent's interests in delaying termination. The stated purpose of the requirement that both parents' rights be terminated in a single proceeding "is to free the dependent child for adoption." (Cal. Rules of Court, rule 1463(g).) Nothing in the rule gives appellant the right to urge on appeal that an error in terminating the father's rights redounds to her benefit so as to make into error an errorless termination of *her* parental rights.

II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The orders of the juvenile court are affirmed.

Blease, Acting P. J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 24, 2000.

*See footnote, *ante*, page 1190.