Filed 4/28/26  In re F.P. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re F.P., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E086870 |
| Plaintiff and Respondent, | (Super.Ct.No. J289845) |
| v. | OPINION |
| A. P., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Laura Feingold, County Counsel, and Joseph R. Barrell, Deputy County Counsel, for Plaintiff and Respondent.

1

# I.  INTRODUCTION

A.P. (Mother) and R.P. (Father) are the biological parents of F.P.  In 2021, F.P. was detained by San Bernardino County Children and Family Services (CFS) after he sustained a skull fracture while in Mother's care,[1] and Mother was unable or unwilling to explain how the injury occurred.  In an initial jurisdictional and dispositional hearing, F.P. was declared a dependent of the juvenile court pursuant to Welfare and Institutions Code[2] section 300 et seq.

After an extensive reunification period in which F.P. was initially returned to Father's custody and later briefly returned to the custody of both parents, CFS filed a supplemental petition pursuant to sections 324 and 387 alleging that the prior disposition had been ineffective.  The juvenile court entered a dispositional order removing F.P. from his parent's custody, terminating reunification services for both parents and setting a hearing for selection of a permanent plan pursuant to section 366.26.  However, in May 2025, the juvenile court granted a section 388 petition brought by Father, reinstating reunification services for Father under a permanent plan of return to Father's custody and vacating the section 366.26 hearing.

In August 2025, Mother brought her own section 388 petition seeking reinstatement of reunification services and liberalization of her visits with F.P.  The juvenile court denied Mother's section 388 petition without an evidentiary hearing, and

---

[1]  Mother and Father were separated and shared custody of F.P.

[2]  Undesignated statutory references are to the Welfare and Institutions Code.

Mother appeals from that order. We conclude that the juvenile court did not abuse its discretion in denying Mother's section 388 petition without an evidentiary hearing and affirm the order.

## II. BACKGROUND

A. *Initial Dependency Petition*

In June 2021, CFS received a referral indicating that F.P. had sustained a skull fracture, was missing a patch of hair, and had recently lost a significant amount of weight. At the time, Mother and Father were separated and shared custody of F.P. pursuant to a written agreement, which was pending court approval. Upon investigation, CFS concluded (1) the injury was nonaccidental; (2) the injury occurred while F.P. was in Mother's care; and (3) Mother was unable to provide an explanation of how the injury occurred. F.P. was detained from Mother only, and CFS filed an initial petition pursuant to section 300 et seq. with allegations pertaining only to Mother.

In September 2021, F.P. sustained another injury while in the care of his paternal grandmother. As a result, F.P. was detained from Father and an amended petition was filed pursuant to section 300 et seq., which included allegations that Father failed to adequately protect or seek medical care for F.P. A second amended petition was subsequently filed, which included more detailed allegations related to the same injuries.

In June 2022, the juvenile court held a contested jurisdictional and dispositional hearing on the second amended petition. With respect to Mother, the juvenile court found true allegations that (1) F.P. sustained severe, nonaccidental injuries while in Mother's care, and Mother was unable to provide a reasonable explanation for how the

3

injuries occurred in support of jurisdiction pursuant to section 300, subdivision (a), (b)(1) and (e); and (2) F.P. suffered from a failure to thrive due to inadequate nutrition while in Mother's care in support of jurisdiction pursuant to section 300, subdivision (b)(1).[3] The juvenile court declared F.P. a dependent, removed F.P. from both parents' custody, and granted both parents reunification services and visitation.

B.  *Reunification Period*

In December 2022, the juvenile court held a six-month review hearing.  CFS noted that both parents had completed their case plans, successfully participated in visitation, and demonstrated progress towards mitigating the circumstances that led to dependency. Based on these observations, CFS recommended F.P. be returned to the custody of both parents under a plan of family maintenance.  In response, the juvenile court returned F.P. to Father's custody, liberalized Mother's visitation, and granted CFS authority to return F.P. to Mother's custody upon a showing of appropriate progress by Mother.

In June 2023, the juvenile court held a review hearing pursuant to section 364. CFS reported that Mother's visits had been positive and had gradually been liberalized to include overnight and weekend visits.  CFS recommended approval of an extended 29-day visit between Mother and F.P., with a potential return to Mother's custody under a plan of family maintenance if the extended visit went well.  However, CFS also informed the juvenile court that (1) there was an open investigation regarding bruises received by

---

[3] The juvenile court also found true allegations that F.P. suffered severe physical injury while in Father's custody, and that Father failed to seek adequate medical care for F.P. upon discovery of the injury.

F.P. after his return from visits with Mother; (2) the district attorney had filed criminal charges against Mother for prior injuries sustained by F.P.; and (3) there was a pending request for a criminal protective order against Mother. The juvenile court granted permission for CFS to arrange the extended visit with Mother but otherwise continued the hearing to permit CFS to provide further information regarding its investigation and the ongoing criminal proceedings against Mother.

In October 2023, the juvenile court held the continued review hearing and ordered that F.P. be returned to the custody of both parents under a plan of family maintenance after receiving confirmation that a criminal protective order had been issued, but the protective order permitted the juvenile court to permit contact between Mother and F.P.

C. *Supplemental Petition*

In March 2024, F.P. was detained from both parents and CFS filed a petition on behalf of F.P. pursuant to sections 342 and 387. After multiple amendments, the supplemental petition alleged that the prior disposition had failed because: (1) Mother failed to protect F.P. from physical abuse perpetrated by Mother's boyfriend; (2) Father failed to seek adequate medical care for F.P. when he discovered physical injuries from the abuse perpetrated by Mother's boyfriend; (3) Father failed to protect F.P. from being exposed to sexually explicit material placed on an electronic device by Father's girlfriend; (4) Father failed to protect F.P. from potential future grooming or sexual abuse by Father's girlfriend; and (5) Father caused F.P. to sustain serious emotional suffering by repeatedly bringing prior abuse by Mother to F.P.'s attention. The petition also

5

realleged that F.P. had suffered severe nonaccidental injury in 2021 while in Mother's custody.

In September 2024, the juvenile court held a contested jurisdictional and dispositional hearing on the supplemental petition. With respect to Mother, the juvenile court found true all of the allegations of the supplemental petition.[4] The juvenile court removed F.P. from both parents' custody, terminated family reunification services for both parents, and set the matter for a hearing pursuant to section 366.26.

D. *Father's Section 388 Petition*

In December 2024, Father filed a petition pursuant to section 388, requesting reinstatement of reunification services and implementation of a permanent plan that involved return of F.P. to Father's custody under a plan of family maintenance. Father submitted a declaration providing a detailed description of the knowledge he obtained while receiving services, attached his therapy and class completion certificates, and provided a bonding study showing he had a healthy, positive, and significant beneficial relationship with F.P.

In response, CFS recommended granting Father's petition. CFS submitted multiple additional information reports that detailed: (1) Father had ended his relationship with his girlfriend in order to prioritize his relationship with F.P.; (2) Father's visits with F.P. had remained consistent, positive, and appropriate; (3)

---

[4] The juvenile court also found true the allegations against Father, with the exception of the allegation that Father should have known his girlfriend was exposing F.P. to sexually explicit material.

6

Father's visits with F.P. had been liberalized as a result of the positive visits; (4) F.P. openly expressed a desire to spend more time with Father; (5) F.P.'s therapist had recommended against any further disruption of F.P.'s relationships at this time because F.P. was experiencing maladaptive behaviors and emotional dysregulation in his current placement; and (6) Father and F.P.'s relationship had progressed to the point where conjoint therapy had been recommended.

After an evidentiary hearing,[5] the juvenile court granted Father's petition, reinstated reunification services for Father, ordered continued visitation for both parents, and vacated the section 366.26 hearing.

E. *Mother's Section 388 Petition and Appeal*

In August 2025, Mother filed her own section 388 petition requesting family maintenance services or, in the alternative, family reunification services as well as liberalization of her visitation with F.P. To show changed circumstances, Mother reported she had (1) completed a 52-week child abuse prevention program referred by the district attorney; (2) a two-hour class on parenting children with a history of childhood trauma; and (3) a two-hour class on coparenting. Mother also claimed that her boyfriend had completed a six-hour "parenting class." Mother submitted a short written statement

---

[5] At the evidentiary hearing, the juvenile court also accepted stipulated testimony from F.P.'s therapist opining that: (1) F.P. suffered emotional trauma from repeated severed attachments; (2) another sudden severed attachment could damage F.P.'s ability to make positive attachments in the future and require extensive additional therapy to resolve; and (3) continued visitation with all of the people F.P. currently had attachments with would be beneficial to F.P. Additionally, F.P.'s counsel argued extensively that it was no longer in F.P.'s interest to pursue termination of parental rights, and that pursuing reunification with Father was the best course of action for F.P.

expressing her personal belief that she was capable of reunifying with F.P. if given the opportunity.[6]

With respect to best interests, Mother stated only that she "always had a relationship with [F.P.]"; F.P. refers to Mother as " 'mommy' " during visits; and F.P. "is always happy to see me and looks to me for his needs during visits."

The juvenile court denied Mother's petition without an evidentiary hearing, noting that Mother had failed to show a change of circumstances or the best interests of F.P. would be promoted by the requested order. Mother appeals from the denial of her section 388 petition.

## III. DISCUSSION

A. *General Legal Principles and Standard of Review*

"Section 388 allows a parent to petition to change, modify, or set aside any previous juvenile court order. [Citation.] 'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child.' " (*In re J.M.* (2020) 50 Cal.App.5th 833, 845; § 388, subd. (a).) "The juvenile

---

[6] The statement provided no details regarding any specific skills or knowledge Mother had obtained in her courses but expressed only Mother's opinion of her capabilities in general language. Specifically, Mother stated she had "gained valuable tools and a deeper understanding of the many roles a parent plays"; has "been able to apply what I've learned in meaningful ways"; is "more confident in creating a safe, supportive space where [F.P.] feels heard, understood, and secure"; believes that she is now "in a place where [she] can provide a stable and nurturing environment for [F.P.] to return home"; and is "ready and willing to continue working" to "ensure a smooth and successful reunification process."

court has discretion whether to provide a hearing on a petition alleging changed circumstances." (*In re Aljamie D.* (2000) 84 Cal.App.4th 424, 431.) However, a " ' "parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing." ' " (*Id.* at p. 432.) "If the liberally construed allegations of the petition do not show changed circumstances such that the child's best interests will be promoted by the proposed change of order, the dependency court need not order a hearing." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250; Cal. Rules of Court, rule 5.570(d)(1).)

"We normally review the grant or denial of a section 388 petition for an abuse of discretion." (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.) This includes the juvenile court's summary denial of a section 388 petition without a hearing. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.)

B. *Application*

Here, Mother's petition alleged that circumstances had changed warranting reinstatement of reunification services because (1) she had completed a new set of classes addressing domestic violence and parenting, and (2) Mother's boyfriend had also recently completed a six-hour parenting course. However, as this court has explained, " '[n]ot every change in circumstance can justify modification of a prior order,' " and "[t]he change in circumstances supporting a section 388 petition must be material." (*In re N.F.* (2021) 68 Cal.App.5th 112, 120-121; see *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 ["To support a section 388 petition, the change in circumstances must be substantial."].)

The record here shows that, at the time of the dispositional hearing on the supplemental petition, Mother had already completed the parenting and domestic violence classes required as part of her case plan. In fact, CFS informed the juvenile court that it considered this aspect of Mother's reunification efforts successfully completed. Mother's failure to complete parenting or domestic violence classes was not considered a deficiency at the time of disposition. Thus, the completion of additional classes on the same topics did not represent a material change from the circumstances that were already considered at the time the juvenile court entered the dispositional order, which Mother sought to modify. Additionally, the jurisdictional allegations referencing Mother's boyfriend involved physical abuse inflicted on F.P. The risk of harm to F.P. did not involve a deficiency with the parenting skills of Mother's boyfriend but the risk of physical abuse and potential domestic violence. Thus, the fact that Mother's boyfriend completed a single 6-hour course on parenting skills did not represent a material change in circumstances warranting modification of the dispositional order.

Where the record shows that the allegations of a section 388 petition, even if liberally construed and accepted as true, do not state a material change of circumstances warranting modification of a prior order, the juvenile court does not abuse its discretion in denying the petition without an evidentiary hearing. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157 ["[T]he parent must sufficiently allege *both* a change in circumstances or new evidence *and* the promotion of the child's best interests," and "[a] prima facie case is made if the allegations demonstrate that these two elements are supported by probable cause."]; *In re Justice P.* (2004) 123 Cal.App.4th 181, 191

10

["[S]ection 388 contemplates that a petitioner make a prima facie showing of both elements to trigger an evidentiary hearing on the petition."]; Cal. Rules of Court, rule 5.570(d)(1) [A juvenile court may deny a petition under section 388, subdivision (a), ex parte if the petition "fails to state a change of circumstance or new evidence that may require a change of order . . . or fails to show that the requested modification would promote the best interest of the child."].)

We also note that, even if Mother had shown changed circumstances, the allegations of her petition, even if accepted as true, did not sufficiently address how her requested changes would be in F.P.'s best interests at this stage in the dependency proceedings. By the time Mother brought her section 388 petition, her reunification services had already been terminated for approximately one year.[7] And "[o]nce reunification services are terminated . . . , the focus of the proceedings changes from family reunification to the child's interest in permanence and stability," and this becomes the focus of any best interest analysis in a section 388 petition. (*In re G.B.*, *supra*, 227 Cal.App.4th at p. 1163; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317 ["After the termination of reunification services," the " 'focus shifts to the needs of the child for permanency and stability.' "].) Thus, to show best interests, Mother was required to allege facts that would suggest her requested modifications advanced F.P.'s interest in permanency and stability.

---

[7] The dispositional order on the supplemental petitions terminating Mother's reunification services was entered in September 2024. Mother's section 388 petition seeking reinstatement of reunification services was filed in August 2025.

11

With respect to F.P.'s best interests, Mother's petition alleged only that she had an existing relationship with F.P. evidenced by positive visitation. However, alleging the existence of a relationship with positive interaction in general terms is not, on its own, sufficient to show that a dependent child's interest in permanency or stability warrants modification of a prior order. (*In re G.B.*, *supra*, 227 Cal.App.4th at p. 1157 ["While the petition must be liberally construed in favor of its sufficiency [citation], the allegations must nonetheless describe specifically how the petition will advance the child's best interests."]; see *In re R.M.* (2025) 111 Cal.App.5th 119, 138 [alleging only "in very general terms" the benefits of maintaining a familial relationship is insufficient to show best interests under section 388].)

On appeal, Mother cites repeatedly to the opinion of F.P.'s therapist that it was in F.P.'s interests to not sever any existing relationships. However, these facts were not alleged in Mother's petition.[8] More importantly, even if we assumed the juvenile court was aware of and considered these facts in denying Mother's petition, we would find no abuse of discretion. F.P.'s therapist opined only that F.P.'s interests would be served by preserving his current relationships and attachments. At the time Mother filed her section 388 petition, the juvenile court had already provided for ongoing visitation between Mother and F.P. And there was no present risk that Mother's relationship with F.P. would be severed, as the current permanent plan was to return F.P. to Father's custody

---

[8] The evidence related to the opinions of F.P.'s therapist was provided to the juvenile court in preparation for an evidentiary hearing on Father's section 388 petition. Mother's separately filed petition did not reference or direct the juvenile court to any of these facts in support of her petition.

with continued visitation between F.P. and Mother.[9] Thus, even if we assumed that it was in F.P.'s best interest to preserve his current relationship with Mother, the orders in effect at the time that Mother filed her section 388 petition already preserved this relationship, and Mother's petition failed to explain how her requested modifications would advance this interest.

The juvenile court does not abuse its discretion by denying a section 388 petition without an evidentiary hearing where the allegations of the petition, even if accepted as true, do not state a material change in circumstances and do not explain how the proposed modification might advance the best interests of the dependent child. In our view, Mother's petition failed to allege facts to support either of these elements. As such, we affirm the order denying her petition.

---

[9] Generally, " '[t]he purpose of termination of parental rights is to free the dependent child for adoption,' " and, in most cases, the juvenile court " 'may not terminate the [parental] rights of only one parent.' " (*In re A.L.* (2010) 190 Cal.App.4th 75, 80 & fn. 5.)

## IV.  DISPOSITION

The order denying Mother's section 388 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____

J.

We concur:

RAMIREZ _____

P. J.


McKINSTER _____

J.

14